IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **ANNE W. KARANJA** | : | |
| 8802 Groton Court | : | |
| Lanham, Maryland 20706 | : | |
| | : | |
| Plaintiff, | : | Civil Case No.: 8:14-cv-573 |
| v. | : | |
| | : | |
| **BKB Data Systems, LLC** | : | |
| **d/b/a Edaptive Systems** | : | |
| 400 Red Brook Boulevard | : | |
| Suite 120 | : | |
| Owings Mills, Maryland 21117-5172 | : | |
| | : | |
| **SERVE:** | : | |
| Julie Blair | : | |
| *Registered Agent* | : | |
| 400 Red Brook Boulevard | : | |
| Suite 120 | : | |
| Owings Mills, Maryland 21117-5172 | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

COMES NOW the Plaintiff Anne W. Karanja, by and through her attorney, Lawrence S. Lapidus, who hereby brings the following cause of action against Defendant BKB Data Systems, LLC (hereinafter "BKB" or "BKB Data Systems") and represents to this Honorable Court as follows:

1. This is a suit brought pursuant to the Pregnancy Discrimination Act, Section 701 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (k), and the federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* to obtain damages and equitable relief against Defendant for discriminatorily terminating Plaintiff due to her pregnancy and for requesting leave to deliver her baby. Plaintiff is also bringing pendent

state claims against Defendant to obtain damages and equitable relief for pregnancy discrimination under Maryland's Reasonable Accommodations for Disabilities Due to Pregnancy Act, Md. Code Ann. State Gov't §§20-601, *et seq*, for discriminating and retaliating against Plaintiff for reporting her pregnancy, and for unpaid wages under the Maryland Wage, Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq* for failing to provide Plaintiff with wages earned and Paid Time Off ("PTO") hours accrued to the time of termination.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. This Court also has pendent jurisdiction over the state law claims under 28 U.S.C § 1367.

3. Venue is appropriate under 28 U.S.C. §1391, in the federal court for Maryland, because this is the State within which the discrimination occurred and where federal law was violated.

4. Plaintiff has exhausted all administrative requirements for bringing this claim, as it has been more than 180 days since she filed her claim with the EEOC and she has requested her right to sue authorization from the EEOC.

## PARTIES

5. Plaintiff, Ms. Anne W. Karanja, is a U.S. citizen and a resident of Lanham, Maryland, and was at all relevant times.

6. Defendant, BKB Data Systems is a for-profit business engaged in offering various business analysts services to the general public and the federal government. It employs more than 50 employees, and is engaged in interstate commerce sufficient to

2

bring it within the jurisdiction of the federal employment protection statutes.

## **FACTS**

7. Plaintiff is a 36-year-old single, black female, who was raised and educated in Kenya, Africa. She came to the U.S. in 1997 to continue her education, and has legally remained in the U.S. ever since and is now a citizen.

8. Plaintiff was hired by Defendant BKB Data Systems on May 14, 2012 to work on a federal project for which BKB had a contract. Plaintiff worked as a business analyst on the project and performed her services well. She passed her probationary period and received two successive evaluations showing that she was meeting all the work elements for which she was evaluated. Plaintiff also received her yearly evaluation on January 25, 2013, rating her as satisfactory in all elements.

9. In late 2012, Plaintiff requested to participate in a telework program, which would have allowed her to work from her home for three days a week under Defendant's telework program. Defendant approved Plaintiff to telework two days a week on December 10, 2012. That approval was to last for 3 months, and was to end on March 10, 2013.

10. On February 15, 2013, Plaintiff reported to her immediate supervisor, Melissa Fieldhouse, that she was 5 months pregnant and that her delivery was scheduled for around June 19, 2013. She reported her condition to her supervisor so that her supervisor would have sufficient time to plan to cover her absence during a period when she would be taking maternity leave of about 6 weeks.

11. Ms. Fieldhouse expressed irritation over the fact that the maternity leave would fall at the "busiest time of the year" and she would probably have to hire and train another business analyst soon to be ready to fill in for Plaintiff during her absence. Ms. Fieldhouse asked Plaintiff for permission to inform the HR Director, Julie Blair, about her pregnancy so that she could discuss what plans they would need to make to cover for her during her planned maternity leave. Plaintiff granted her supervisor permission to report her pregnancy to HR Director Blair. A day or two later Supervisor Fieldhouse questioned Plaintiff as to whether she was contacted by HR Director Blair yet, as she had passed on the information about her pregnancy to the HR director.

12. On February 19, 2013, HR Director Blair sent Plaintiff an email canceling her right to telework two days a week, without explanation, and also directing her to take the next three days off because of her scheduled doctor's appointments. Ms. Blair was referring to the appointments, which Plaintiff had discussed with Supervisor Fieldhouse on February 15, 2013. Plaintiff made clear that she was available to work on each of those days, but she was not given any choice besides using paid time off. HR Director Blair insisted that Ms. Karanja return to the office on February 25, 2013, and required Ms. Karanja to work on site each and every day thereafter, which was forty-seven miles from Ms. Karanja's home.

13. Plaintiff returned to work on February 25, 2013 at the Owings Mills job site and worked the entire day. She handed her supervisor, Ms. Fieldhouse, a list of her upcoming doctor appointments, including those involving her son, who had serious health conditions during this period also. Ms. Fieldhouse asked Plaintiff if she

4

considered applying for Maryland's Chip program (referring to Child Health Improvement Program). Plaintiff responded she would not be eligible because she has insurance through her employer.

14. Plaintiff appeared for work on February 26, 2013. Ms. Fieldhouse told Plaintiff she was still waiting to hear back from HR Director Blair as to how she would deal with Plaintiff's medical appointments schedule. Ms. Fieldhouse told Plaintiff she still had 14 hours of Paid Time Off ("PTO") remaining, but she said that all such time had to be pre-approved. Plaintiff proposed to make up the time that she used for appointments by working later into the evening. Ms. Fieldhouse told Ms. Karanja that HR Director Blair had approved Ms. Karanja doing so, rather than taking the time as PTO.

15. Around 12:30 p.m. on February 26, 2013, Plaintiff received a call from her significant other that her son had to be hospitalized immediately because of a severe bacterial infection, which he had been suffering from for several days. Plaintiff wrote an emergency email to Ms. Fieldhouse, who had left the office for a meeting, and her coworker team stating she had a family emergency and needed to attend to her child at the hospital right away. Plaintiff later called Ms. Fieldhouse from the hospital, and left a voicemail giving Ms. Fieldhouse more details about why she needed to leave so quickly, since Ms. Fieldhouse did not pick up her phone. Plaintiff never received any reply whatsoever from Ms. Fieldhouse that day. On the morning of February 27, 2013, Plaintiff again attempted to call Ms. Fieldhouse before work, this time seeking approval to take the day off because her son required surgery that very day. When Ms. Fieldhouse did not

answer, Plaintiff left a voicemail request for her and also followed that with an email seeking approval to use her PTO to take the day off.

16. While she was still at the hospital attending to her seriously ill child on February 27, 2013, Plaintiff received an email at around 3:45p.m. from HR Director Blair giving her notice of termination effective that day. HR Director Blair's purported reason for terminating Plaintiff was Plaintiff's failure to fulfill her agreement to return to work on a full time basis.

17. Defendant never provided Ms. Karanja a final paycheck for her last two weeks of work, nor was Ms. Karanja paid for any PTO time accrued up to the time of termination.

18. Plaintiff applied for unemployment, and Defendant challenged the claim by arguing Ms. Karanja was terminated as a "disciplinary measure," but Defendant never provided any evidence of misconduct to the Maryland Unemployment Commission. The Commission approved Ms. Karanja's unemployment claim.

19. Plaintiff later learned her health insurance was terminated.

20. As a direct result of Defendant's actions, Plaintiff suffered greatly from the anxiety of no longer having either income or health insurance to cover her extensive costs for OBGYN appointments related to her pregnancy, living expenses, the delivery of her child, or care for her seriously ill son.

## COUNT I

**Defendant Violated the Federal Pregnancy Discrimination Act in**

**Discriminating Against Plaintiff Due to Her Pregnancy**

21. Plaintiff incorporates by reference paragraphs 1 through 20 above.

22. Defendant discriminated against Plaintiff in violation of the federal Pregnancy Discrimination Act, Section 701 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(k), when it unjustifiably stripped her of her ability to telework from home two days each week, then terminated her employment due to her pregnancy.

23. As a result of Defendant's violations of the federal Pregnancy Discrimination Act, Plaintiff has suffered a loss of employment opportunities due to the stigma of having been terminated for cause, as well as lost compensation, fringe benefits and other rights of her employment.

24. As a result of Defendant terminating Plaintiff, Plaintiff has suffered from emotional pain, mental anguish from worrying about finding income to pay for her and her son's medical bills, humiliation, and loss of enjoyment of life.

## COUNT II

**Defendant Violated the Federal Family and Medical Leave Act ("FMLA")**

**in Discriminating Against Plaintiff Due to Her**

**Attending to Her Son's Serious Health Condition**

25. Plaintiff incorporates by reference paragraphs 1 through 24 above.

26. Defendant discriminated against Plaintiff in violation of the federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.,* when it terminated her employment due to her requesting maternity leave time off in June 2013 in order in order

7

to deliver her baby.

27. As a result of Defendant's violations of the FMLA, Plaintiff has suffered a loss of employment opportunities due to the stigma of having been terminated for cause, as well as lost compensation, fringe benefits, and other rights of her employment.

28. As a result of Defendant terminating Plaintiff, Plaintiff has suffered from emotional pain, mental anguish from worrying about finding income to pay for her and her son's medical bills, humiliation, and loss of enjoyment of life.

## COUNT III

**Defendant Violated Maryland's Reasonable Accommodations for Disabilities Due to Pregnancy Act ("RADDPA") in Discriminating Against Plaintiff and Failing to Provide a Reasonable Accommodation for Plaintiff's Pregnancy Disability**

29. Plaintiff incorporates by reference paragraphs 1 through 28 above.

30. Defendant discriminated against Plaintiff in violation of Maryland's Reasonable Accommodations for Disabilities Due to Pregnancy Act ("RADDPA"), Md. Code Ann. State Gov't §§20-601, *et seq*, when it unjustifiably rescinded her approved reasonable accommodation of teleworking from home two days each week after reporting her pregnancy to Defendant. Defendant also violated the non-discrimination and non-retaliation provisions of RADDPA by terminating Plaintiff's employment for pretextual reasons within weeks after she reported her pregnancy and need for time off to her supervisor.

31. As a result of Defendant's violations of RADDPA, Plaintiff has suffered a loss of employment opportunities due to the stigma of having been terminated for cause,

as well as lost compensation and fringe benefits, and other rights of her employment.

32. As a result of Defendant terminating Plaintiff, Plaintiff has suffered from emotional pain, mental anguish from worrying about finding income to pay for her and her son's medical bills, humiliation, and loss of enjoyment of life.

## COUNT IV

**Defendant Violated the Maryland Wage, Payment and Collection Law ("MWPCL")**

**in Withholding Plaintiff's Wages Earned**

**and Vacation Hours Accrued After Terminating Her**

33. Plaintiff incorporates by reference paragraphs 1 through 32 above.

34. At all times, Plaintiff was Defendant's "employee," and Defendant was her "employer" within the meaning of the MWPCL §§ 3-501, *et seq*. Under MWPCL § 3-505. Defendant, as Plaintiff's employer, was obligated to pay Plaintiff all wages due for work the Plaintiff performed before termination, and for PTO accrued up to that date.

35. Defendant violated the Maryland Wage, Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq*, in unjustifiably failing to provide Plaintiff with wages earned and PTO hours accrued by the next prospective pay period after Defendant's discriminatory termination of Plaintiff.

36. Defendant's failure to pay Plaintiff all wages and PTO due for hours worked was willful and intentional, was not the result of any *bona fide* dispute between Plaintiff and Defendant, and was not in good faith.

37. As a result of Defendant's violations of MWPCL, Plaintiff has lost compensation, fringe benefits, and other rights of her employment due her.

**REQUEST FOR RELIEF**

**WHEREFORE,** the Plaintiff requests this Court grant her the following relief:

1. Direct this Defendant to reinstate the Plaintiff to the position she would have held had Defendant not discriminated against her, and to provide back pay and/or front pay and other benefits related to her employment, payment under MWCPL amounting to three (3) times the amount of unpaid/improperly withheld wages and PTO at the time of her termination.

2. Direct Defendant to expunge all of Plaintiff's records of being disciplined and terminated for disciplinary reasons.

3. Direct Defendant to pay Plaintiff compensatory damages for Plaintiff's emotional pain, anguish, humiliation, and loss of enjoyment of life she suffered because of its discriminatory treatment of her for reporting her pregnancy and need for time off from work.

4. Direct Defendant to pay pre and post judgment interest on any amounts determined to be owed to Plaintiff because of violations of her rights to be free of discrimination and retaliation because of her pregnancy and need for time off from work.

5. Direct Defendant to pay Plaintiff reasonable attorneys' fees and costs in having to bring this action to secure her rights under the laws protecting her from discrimination and retaliation for reporting her pregnancy and need for time off and because of Defendant's failure to pay her properly at time of termination.

6. Direct Defendant to take such other measures as might be necessary to carry out the spirit of the remedial provisions of the statutes cited above in order to make

Plaintiff whole from the discriminatory action taken by Defendant against her.

                                                  Respectfully submitted,

                                                  /s/Lawrence S. Lapidus  
                                                  Lawrence S. Lapidus, Bar # 02922  
                                                  The Lapidus Law Firm, PLLC  
                                                  1331 H Street, N.W., Suite 902  
                                                  Washington, D.C.  20005  
                                                  Tel: (202) 785-5111  
                                                  Fax: (202) 318-8799  
                                                  llapidus@lapiduslawfirm.com

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury of all issues so triable as presented in the Complaint.

                                                  /s/Lawrence S. Lapidus  
                                                  Lawrence S. Lapidus

## **CERTIFICATION OF MARYLAND COUNSEL WITH AN OUT OF STATE OFFICE**

**I HEREBY CERTIFY** that I am a member in good standing of the Maryland Bar, but wish all court notices and pleadings served upon me to be sent to my District of Columbia office per the address following my signature on the Complaint.

                                                  /s/Lawrence S. Lapidus  
                                                  Lawrence S. Lapidus