IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANNE KARANJA

   :

   :

 v.     : Civil Action No. DKC 14-0573

   :

BKB DATA SYSTEMS, LLC d/b/a
EDAPTIVE SYSTEMS  :

   :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this pregnancy discrimination case is Defendant Edaptive Systems, LLC's motion to dismiss. (ECF No. 21). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion to dismiss will be denied.

## I. Background

### A. Factual Background

Defendant BKB Data Systems, LLC, which now does business as Edaptive Systems, LLC ("Defendant" or "Edaptive Systems"),[1] is a for-profit business which offers a variety of business consulting services to the general public and the federal government. (ECF No. 20 ¶ 6). Plaintiff Anne Karanja was hired

---

[1] Defendant notes in its motion to dismiss that "Edaptive Systems, LLC is the proper name of the defendant in this action. Plaintiff mistakenly used a prior corporate name[.]" (ECF No. 21, at 1 n.1).

by Defendant on May 14, 2012 as a business analyst to work on a federal contract project. (*Id.* ¶ 8). In late 2012, Plaintiff requested to participate in Defendant's telework program, and was approved for two days of telework per week for a three month period starting December 10, 2012 and ending March 10, 2013. (*Id.* ¶ 9).

On Friday, February 15, 2013, Plaintiff informed her immediate supervisor, Melissa Fieldhouse, that she was five months pregnant and that her due date was around June 19, 2013. (*Id.* ¶ 10). She reported her condition in advance in order to give her supervisor sufficient time to plan for her absence during her intended six weeks of maternity leave. (*Id.* ¶ 10). According to Plaintiff, "Mrs. Fieldhouse expressed irritation over the fact that [Plaintiff's] maternity leave would fall at the 'busiest time of the year' and she would probably have to hire and train another business analyst soon to be ready to fill in for Plaintiff during her absence." (*Id.* ¶ 11). Mrs. Fieldhouse asked Plaintiff if she could inform Edaptive System's Human Resources Director, Julie Blair, about Plaintiff's pregnancy so that they could discuss making plans for her maternity leave. Plaintiff permitted Mrs. Fieldhouse to tell Ms. Blair. (*Id.*).

Several days later, on Tuesday, February 19, 2013, Ms. Blair sent Plaintiff an email informing her that her telework

privileges had been revoked effective immediately, and directed Plaintiff to take the next three days off to attend the doctor's appointments she had scheduled. (*Id.* ¶ 11). Plaintiff had previously discussed these appointments with Mrs. Fieldhouse on February 15, 2013. Plaintiff made clear to Ms. Blair that she was available to work on those days despite having the appointments, but Ms. Blair did not give her any choice but to take paid time off and return to Defendant's worksite on Monday, February 25, 2013. (*Id.* ¶ 12). Ms. Blair informed Plaintiff that she was to work on site every day thereafter, which was a forty-seven mile commute from Plaintiff's home. (*Id.*). Plaintiff returned to work on Monday, February 25, 2013 at Edaptive System's Owings Mills worksite and worked the entire day. (*Id.* ¶ 13). She gave Mrs. Fieldhouse a list of her upcoming doctor's appointments, including those for her son, who had a serious health condition at the time. (*Id.*). On Tuesday, February 26, 2013, Plaintiff returned to work and was informed by Mrs. Fieldhouse that Ms. Blair had not yet approved Plaintiff's medical appointments schedule. Mrs. Fieldhouse also informed Plaintiff that she currently had fourteen hours of paid time off remaining, but that she would need to have such time pre-approved before taking it. (*Id.* ¶ 14). Plaintiff proposed to make up the time she used to attend doctor's appointments by working later into the evening. Mrs. Fieldhouse informed

3

Plaintiff that Ms. Blair approved of this proposal, and that Plaintiff could work longer hours to make up for her appointments rather than taking paid time off. (*Id.*).

Around 12:30 p.m. on February 26, 2013, Plaintiff received a call informing her that her son had been hospitalized due to a severe infection that he had been suffering from for several days. Plaintiff immediately emailed Mrs. Fieldhouse, who had left the office, and her coworkers informing them that she had a family emergency and needed to go to the hospital to attend to her son. Later that afternoon, Plaintiff also called Mrs. Fieldhouse and left a voicemail with more details explaining why she needed to leave work promptly. Mrs. Fieldhouse never returned her call. On the morning of February 27, 2013, prior to the start of the workday, Plaintiff attempted to call Mrs. Fieldhouse again to request the day off because her son required emergency surgery. Mrs. Fieldhouse again did not answer. Plaintiff left Mrs. Fieldhouse another voicemail and followed up with an email seeking approval to use paid time off. Later that afternoon, while Plaintiff was at the hospital with her son, she received a call from Ms. Blair around 3:45 p.m. notifying her that she had been terminated by Edaptive Systems effective that day. Ms. Blair indicated that Plaintiff's termination was due to her failure to fulfill her agreement to return to Defendant's worksite on a full-time basis. (*Id.* ¶¶ 15-16).

4

Plaintiff alleges that she never received a final paycheck for her last two weeks of work at Edaptive Systems — the pay period of February 15-28, 2013 — nor did she receive payment for her paid time off that had accrued as of her termination date. (*Id.* ¶ 17).  Plaintiff's health insurance was terminated as of her termination and according to Plaintiff, she "suffered greatly from the anxiety of no longer having either income or health insurance to cover her extensive costs for OBGYN appointments related to her pregnancy, living expenses, the delivery of her child, or care for her seriously ill son." (*Id.* ¶ 20).

**B.   Procedural Background**

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 22, 2013 and on August 7, 2013. (*Id.* ¶ 21).  On February 26, 2014, Plaintiff Anne Karanja filed an initial complaint in this court. (ECF No. 1).  Defendant Edaptive Systems moved to dismiss the initial complaint on April 4, 2014. (ECF No. 8).  Plaintiff filed an amended complaint on June 10, 2014 (ECF No. 20), and Defendant's motion to dismiss was denied as moot (ECF No. 19).  The amended complaint alleges multiple counts arising from Plaintiff's employment and termination, including:  (1) violation of the Pregnancy Discrimination Act (count I); (2) violation of the

Family and Medical Leave Act (count II); and (3) violation of the Maryland Wage Payment and Collection Act (count III).

Defendant filed a second motion to dismiss on June 17, 2014, moving to dismiss counts II and III of Plaintiff's complaint, or in the alternative, for summary judgment on count III. (ECF No. 21). The motion is fully briefed. (ECF Nos. 27, 28, 29, and 31).[2]

## II. **Family and Medical Leave Act (Count II)**

### A. **Standard of Review**

Defendant moved to dismiss count II of Plaintiff's complaint for failure to state a claim. The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of

---

[2] Plaintiff filed her opposition multiple times (ECF Nos. 27, 29, 31). The filings contain the same substantive argument. Plaintiff simply made changes to her exhibits. Her affidavit is attached to ECF No. 29, and the clearest photocopy of her most recent paystub from Defendant is attached at ECF No. 31.

further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## B.  Analysis

Plaintiff alleges that Defendant discriminated against her in violation of the Family and Medical Leave Act ("FMLA") by terminating her employment after she gave advanced notice of her intent to take maternity leave in June 2013. (ECF No. 20, at 6-7). Defendant argues that the FMLA claim should be dismissed because Plaintiff has not alleged facts establishing that she was eligible for coverage under the FMLA. According to Defendant, Plaintiff must have pled that she worked for Edaptive

Systems for at least twelve months *and* that she had worked at least 1,250 hours during the previous year in order to be an eligible employee subject to the statutory protections of the FMLA.   Because Plaintiff only worked for Edaptive Systems for approximately nine months, Defendant contends that she is not an eligible employee and her FMLA claim must be dismissed.

Plaintiff acknowledges that at the time of her termination she was not eligible for FMLA coverage because she did not yet have a year of service.   She contends, however, that Defendant interfered with her FMLA rights and retaliated against her by terminating her twelve days after she made a request to take time off in June 2013 *after* she became entitled to FMLA leave. (ECF No. 29, at 2-3).   Plaintiff argues that because the FMLA requires employees to give their employer's advanced notice of their intent to take leave and because she was seeking FMLA leave that would have commenced at a time when she would have been eligible for FMLA protections, she was clearly protected by the FMLA and accordingly Edaptive Systems is liable for interfering with her FMLA rights and retaliating against her.

The FMLA provides that an eligible employee must be allowed to take up to twelve work weeks of unpaid leave during any twelve-month period "[b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter."   29 U.S.C. § 2612(a)(1)(A).   Under FMLA section

2615(a), employees may bring two types of claims against their employer:  (1) "interference," in which the employee alleges that an employer denied or interfered with her substantive rights under the FMLA, and (2) "retaliation," in which the employee alleges that the employer discriminated against her for engaging in a protected activity under the FMLA.  *See Dotson v. Pfizer, Inc.*, 558 F.3d 284, 294-95 (4th Cir. 2009).

Defendant's only challenge to the FMLA claim is on the basis that Plaintiff was not an "eligible employee" on the date she gave Defendant notice of her intent to take future leave and therefore is not subject to the protections of the FMLA.  An "eligible employee" under the FMLA is one who has been employed for more than twelve months before requesting leave under the FMLA, and has worked at least 1,250 hours within that period.  29 U.S.C. § 2611(2)(A).  Plaintiff's first day of employment with Defendant was on May 14, 2012.  (ECF No. 20 ¶ 8).  It is undisputed that as of February 15, 2013, the day on which Plaintiff notified Defendant of her pregnancy and intent to take future FMLA leave, Plaintiff had worked for Defendant for approximately nine months, meaning she was not yet eligible to take FMLA leave.  Plaintiff's request for FMLA leave, however, was for the time period on or around her due date of June 19, 2013, a time at which she would have been eligible for FMLA leave had her employment continued, because she would have

worked for Defendant for thirteen months. Accordingly, it must be determined whether Plaintiff has stated a plausible interference or retaliation claim based on her pre-eligibility notification to Defendant of her intent to take FMLA leave during a time at which she would have been eligible for leave.

Several courts have addressed this very issue, including the United States Court of Appeals for the Eleventh Circuit in a factually similar scenario in *Pereda v. Brookdale Senior Living Communities, Inc.,* 666 F.3d 1269 (11th Cir. 2012). *Pereda* involved an employee who began work in October 5, 2008, notified her employer in June 2009 of her pregnancy and intent to take FMLA leave on or about her due date of November 30, 2009, and who was subsequently discriminated against and then terminated in September 2009. *Id.* at 1271. The district court dismissed Pereda's claims on the basis that she had failed to state a claim because her employer could not have interfered with her FMLA rights considering that: she was not entitled to take FMLA leave at the time she requested it, and she could not have engaged in a protected activity because she was not yet eligible for FMLA leave. *Id.* at 1271. On appeal, the Eleventh Circuit addressed the question of "whether the FMLA protects a pre-eligibility request for post-eligibility maternity leave" and found in the affirmative. *Id.* at 1272. In analyzing this issue, the court noted:

"The determination of whether an employee has worked for the employer for at least 1,250 hours in the past 12 months and has been employed by the employer for a total of at least 12 months must be made *as of the date the FMLA leave is to start*." 29 C.F.R. § 825.110(d).

Here, it is undisputed that Pereda, at the time she requested leave, was not eligible for FMLA protection because she had not worked the requisite hours and had not yet experienced a triggering event, the birth of her child. It is also undisputed that she would have been entitled to FMLA protection by the time she gave birth and began her requested leave.

. . . .

After examining the various elements of the FMLA regulatory scheme, such as the 30-day notice requirement[3] and the DOL implementing regulations,[4] we conclude that allowing the

---

[3] The FMLA notice requirement mandates that: "In any case in which the necessity for leave . . . is foreseeable based on an expected birth or placement, the employee shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave[.]" 29 U.S.C. § 2612(e)(1).

[4] As for the Department of Labor regulations, the court noted that:

> pursuant to the DOL's implementing regulation 29 C.F.R. § 825.112, employees are eligible for FMLA leave only upon the delivery of a child. Eligibility is but one aspect of the regulation. Notice of a future trigger event is another. It is axiomatic that the delivery of a child is necessary in order for FMLA leave to actually commence, but that requirement does not open the door for pre-eligible interference with FMLA rights with impunity. Furthermore, the regulation cannot be read

> district court's ruling to stand would
> violate the purposes for which the FMLA was
> enacted. Without protecting against pre-
> eligibility interference, a loophole is
> created whereby an employer has total
> freedom to terminate an employee before she
> can ever become eligible. Such a situation
> is contrary to the basic concept of the
> FMLA. Thus, this Court disagrees with the
> district court and finds that Pereda stated
> sufficient facts to establish *prima facie*
> claims for both FMLA interference and
> retaliation.

*Id.* (emphasis added). The court also cited 29 C.F.R. § 825.220

as further support for its decision. 29 C.F.R. § 825.220

provides that "[t]he [FMLA's] prohibition against interference

prohibits an employer from discriminating or retaliating against

an employee or *prospective employee* for having exercised or

attempted to exercise FMLA rights." 29 C.F.R. 825.220(c)

(emphasis added). It also provides that "[e]mployees cannot

waive, nor may employers induce employees to waive, their

*prospective rights* under FMLA." 29 C.F.R. 825.220(d) (emphasis

added). The two references in this regulation to an employee's

*prospective* rights under the FMLA indicates that an employer may

> in isolation. Taken together with other
> regulations addressing leave, it is clear
> that the FMLA scheme intends that a
> determination as to eligibility be made "as
> of the date the FMLA leave is to start." 29
> C.F.R. § 825.110(d).

*Id.* at 1274.

not interfere with an employee's future rights even if the employee is not presently entitled to FMLA leave.

The analysis in *Pereda* is persuasive.  Although not every court has reached the same conclusion in deciding this issue, the majority of courts have come to the same conclusion as the Eleventh Circuit.  *Gleaton v. Monumental Life Ins. Co,* 719 F.Supp.2d 623, 629 (D.S.C. 2010) ("The court finds that an employee may bring a retaliation claim under the FMLA if the employee was terminated prior to becoming eligible for FMLA leave, but the employee declared an intention to take leave more than one year after employment commenced."); *Reynolds v. Inter-Indus. Conference on Auto Collision Repair,* 594 F.Supp.2d 925, 930 (N.D.Ill. 2009) (finding that "under the FMLA, an employer may not terminate an employee who has worked less than twelve months for requesting foreseeable leave that the employee will be eligible for and entitled to at the time the leave is to begin"); *see also Potts v. Franklin Elec. Co.,* No. 05-433 JHP, 2006 WL 2474964, at *3 (E.D.Okla. Aug. 24, 2006) ("If courts were to read the FMLA to allow employers to dismiss ineligible employees who give advance notice of their need for FMLA leave, it would open a large loophole in the law and undermine the plain language and purpose of the notice requirement in §2612(e)(1)."); *Beffert v. Pennsylvania Dep't Pub. Welfare,* No. 05-43, 2005 WL 906362, at *3 (E.D.Pa. Apr. 18, 2005) (finding

that "an employee is not barred from proceeding with a retaliation claim under the FMLA if he or she has been employed for less than twelve months but requests leave to begin more than one year after employment commenced"); *but see Gleaton,* 719 F.Supp.2d at 628 (collecting cases that have "held that an employee cannot bring a retaliation claim under the FMLA unless he or she was eligible for leave at the time it was requested").

Plaintiff has stated facts showing that she would have been eligible for FMLA leave in June 2013, the time period for which she gave Defendant notice of her intent to take future FMLA leave due to her pregnancy.  She also has alleged that Defendant took several actions against her immediately following her notification, including terminating her telework privileges, forcing her to take paid time off, and then terminating her employment.  Plaintiff's allegations are sufficient to contend that Defendant Edaptive Systems may have interfered with Plaintiff's attempt to exercise her prospective FMLA rights by giving her employer the advanced notice required by 29 U.S.C. § 2612(e)(1), or retaliated against her for giving notice of her intent to take future leave for which she would likely become eligible.  *See Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 314 (6th Cir. 2001) ("The right to actually take twelve weeks of leave pursuant to the FMLA includes the right to declare an intention to take such leave in the future [without

14

being retaliated against.]"); *see also Pereda,* 666 F.3d at 1275 (noting that to permit employers to evade their FMLA obligations by taking adverse actions against employees who are likely to exercise their FMLA rights in the future would "frustrate the purpose of the FMLA").

## III. Maryland Wage Payment and Collection Law (Count III)

### A.    Standard of Review

Defendant has moved to dismiss, or in the alternative, for summary judgment as to count III.   Defendant submits several exhibits which allegedly support dismissal of this claim. Plaintiff's opposition also contains several exhibits relating to the MWPCL claim.

Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion.  *See Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007).   If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."   Fed.R.Civ.P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to

convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."). In this instance, it is appropriate to consider the extraneous materials, as they are likely to facilitate disposition of this case. Accordingly, Defendant Edaptive System's motion shall be treated as a motion for partial summary judgment as to the MWPCL claim.

Rule 56(a) of the Federal Rules of Civil Procedure, permits a party to move for summary judgment or partial summary judgment by identifying "each claim or defense [] on which summary judgment is sought." A motion for summary judgment shall be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The moving party bears the burden of showing that there is no genuine dispute as to any material fact. However, no genuine dispute of material fact exists if the nonmoving party fails to make a sufficient showing that a genuine dispute exists. *Celotex,* 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine dispute for trial.

In *Anderson v. Liberty Lobby, Inc.,* the Supreme Court of the United States explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  477 U.S. at 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union,* 424 F.3d 397, 405 (4th Cir. 2005).  The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson,* 477 U.S. at 252.  A "party cannot create a genuine dispute of material fact through mere speculation or compilation

of inferences." *Shin v. Shalala,* 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

### B.  Analysis

Plaintiff alleges that Defendant violated the Maryland Wage Payment and Collection Law ("MWPCL") by failing to pay all of the wages earned and paid time off ("PTO") hours she had accrued as of the date of her termination.  (ECF No. 20, at 7). Defendant argues that Plaintiff's MWPCL claim should be dismissed because the MWPCL only permits employees to bring private causes of action under sections 3-502 or 3-505 and the facts alleged by Plaintiff do not state a claim under either section.  Specifically, Defendant contends that Plaintiff has not raised an issue under section 3-502 because she has not challenged the timeliness of her wage payments, and even if she had, she was an exempt employee not subject to the timing requirements of section 3-502.[5]  Defendant also asserts that Plaintiff has not stated a claim under section 3-505 because she was not due any payment at her termination date because her PTO balance was in the negative and exceeded the value of the pay that she was due.  Defendant argues that Plaintiff was subject to its company policy, which Plaintiff consented to, permitting Edaptive Systems to make deductions from an employee's final

---

[5] Plaintiff concedes in her affidavit that she was treated as an exempt employee.  (ECF No. 29, at 11).  Accordingly, she does not appear to have a claim under section 3-502.

paycheck if the employee carried a negative PTO balance at the time of termination.  (ECF No. 21-1, at 8).  Defendant attaches a Final Pay Calculation Form (ECF No. 21-2, at 15) and an affidavit from Edaptive System's Director of Human Resources, Julie Blair (ECF NO. 21-2, at 1-3), attesting that Plaintiff was not due any additional pay as of her termination date because the negative value of her PTO balance exceeded the value of any pay she was due.

The MWPCL requires that "each employer shall pay an employee or the authorized representative of an employee all wages due for work performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated."  Md. Code Ann., Lab & Empl. § 3-505(a).  An employer is not required to pay the employee accrued leave time upon termination if:  the employer has a written policy limiting such compensation, the employer notified the employee of its leave benefits, and the employee is not entitled to leave pay based on the terms of the employer's policy.  Lab & Empl. § 3-505(b).

Based on the evidence presented by the parties, there is a genuine dispute of material fact concerning whether Plaintiff was due compensation at the time of her termination.  Plaintiff has provided an affidavit attesting to the fact that her

supervisor told her on the morning February 26, 2013, the day before she was terminated, that she had fourteen hours of PTO time as of that day.[6]   (ECF No. 29, at 13-14).   Therefore, according to Plaintiff, on the day she was terminated her PTO time was in the positive, rather than the negative. Accordingly, she was due compensation for her PTO hours as well as for the time that she worked between February 15-26, 2013. (ECF No. 29, at 12-13).   Plaintiff also submits the last paystub she received from Edaptive Systems on February 22, 2013, which covered the pay period of February 1-15, 2013.   The paystub shows that she had taken thirty-two PTO hours for 2013.   (ECF No. 31-1, at 1).   Defendant submitted an affidavit from its Director of Human Resources, Julie Blair, stating that at the time of her termination:

> Ms. Karanja was due $2,250.32 in pay but had a negative PTO balance of 89.63 hours because Edaptive had allowed her to take advanced PTO.   Ms. Karanja's negative PTO balance equated to $2,618.31.   Because the amount of her negative PTO balance exceeded her remaining pay due, Ms. Karanja's net pay due was a negative balance and thus she was not due any additional pay as of her termination date.   The calculation and accounting of Ms. Karanja's final pay and PTO balance is reflected in the form

---

[6]  Plaintiff's affidavit provides conflicting numbers, but states that she used either two or four of these remaining fourteen hours on Tuesday, February 26, 2013 in order to accompany her son to the emergency room, meaning that she had either ten or twelve remaining PTO hours as of February 27, 2013, her termination date.

> attached as [Final Pay Calculation Form],
> which is the standard form that Edaptive
> uses for this purpose.

(ECF No. 21-2 ¶ 6).  The Final Pay Calculation Form referenced

by Ms. Blair shows the Plaintiff's "Pro-rated current year leave

hours" as 18.67 hours and "Leave Taken during the year" as

108.00 hours.  (ECF No. 21-2, at 15).  Defendant subtracted the

positive PTO hours Plaintiff had accrued in 2013 (18.67) from

the 108.00 hours she had allegedly already taken to arrive at a

total negative PTO balance of 89.63 hours, which amounts to a

negative payout of $2,618.31.[7]  Plaintiff disputes the accuracy

of this Final Pay Calculation form based on the fact that Mrs.

Fieldhouse indicated on the day prior to her termination that

Plaintiff had fourteen hours of positive PTO time to take as of

that date.  (ECF No. 29, at 13).  In addition, the PTO hours

represented on the Final Pay Calculation Form (108) (ECF No. 21-

2, at 15),  seem suspect as they do not appear to harmonize with

---

[7] It is not apparent how Plaintiff's PTO time surged from 32
hours to 108 hours in a matter of less than two weeks,
especially when Plaintiff attests that she worked four and a
half days during the pay period from February 15-28, 2013.  Even
counting the three days Defendant forced Plaintiff to take PTO
(February 20-22, 2013), the half day of PTO Plaintiff took on
February 26, and counting Plaintiff's termination date (February
27) as a PTO day, it would amount to an additional four and a
half days or 36 hours of PTO during the February 15-27 pay
period, which if added to the PTO hours presented on Plaintiff's
previous paystub would amount to 68 hours of PTO for 2013 rather
than 108 hours.  Based on this re-calculation of Plaintiff's PTO
time, it is not apparent that her negative PTO balance exceeded
the wages she was owed for her final pay period.

the immediately preceding paycheck Plaintiff received from Defendant on February 22, 2013, which represented that she had taken only 32 hours to date, (ECF No. 31-1). Moreover, as Plaintiff notes in her affidavit, she was never provided a final paycheck or the Final Pay Calculation Form that was attached to Defendant's brief. Accordingly, Defendant is not entitled to summary judgment as to liability under section 3-505 of the MWPCL, because there appears to be a genuine dispute of material fact over whether Plaintiff was owed additional sums for wages earned or PTO accrued at the time of her termination on February 27, 2014.

## IV.  Conclusion

For the foregoing reasons, the motion to dismiss, or in the alternative for summary judgment, filed by Defendant Edaptive Systems will be denied.  A separate order will follow.


                              _____/s/_____
                              DEBORAH K. CHASANOW
                              United States District Judge